197 So.2d 6 (1967)
Rhoda GLASSER, Petitioner,
v.
COLUMBIA FEDERAL SAVINGS AND LOAN ASSOCIATION OF MIAMI SHORES, Respondent.
No. 35923.
Supreme Court of Florida.
March 29, 1967.
Richard L. Lapidus, Miami, for petitioner.
Joseph F. Jennings, of Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for respondent.
DREW, Justice.
The decision of the district court in this case[1] has been certified as one which passes upon a question of great public interest as to whether the United States Court of Appeals, Fifth Circuit, in Bello v. Union Trust Co.,[2] has correctly enunciated the Florida law controlling this case, which relates to the effect of payment by a banking institution of a check owned by husband and wife in an estate by the entireties on endorsement thereof by one spouse for himself and his forged endorsement for the other.
In this case, as in the cited opinion followed by the court below, suit was instituted by a wife against a collecting bank upon a check drawn to her and her husband and held as an estate by the entirety. Summary judgment for defendant was entered on a claim of discharge, the conceded facts showing collection by the husband upon forgery of his wife's signature, and deposit to his own account in the respondent bank.
The federal court in its opinion in Bello, supra, considered the Florida statutory provisions that forged endorsements are inoperative and that all payees must endorse in the absence of agency authority.[3] It concluded, *7 however, that because of the nature of tenancy by entirety "when a bank pays one spouse, it has legally paid the other spouse as well," and "Such payment is not affected by the forged indorsement."[4] As a predicate for this result the Court relied on repeated applications of the doctrine of unity of possession in Florida cases relating to estates by entirety.[5]
The decision, we think, is irreconcilable with the equally well established principle that an estate by entirety cannot be alienated by the act of either spouse alone.[6] The apparent contention is that the transfer does not constitute an alienation because the estate by entirety continues in the cash proceeds, and the right of possession of the whole by each party permits either, individually, to change the form of property from check to cash.
Such reasoning is clearly at variance with the general rules of law under which possessory rights are distinct and separate from rights of transfer, and with principles controlling transfer of estate by entirety in real property. Previous Florida cases governing the estate in personal property do not in our opinion dictate this result.[7] The decision in Merrill v. Adkins,[8] that a note payable to husband and wife was discharged by payment to the husband, was based expressly on his right as a husband to possess and control personalty owned by either spouse or by both together.[9] That case was decided prior to the enactment of the married women's emancipation act of 1943[10] and at a time when disabilities of coverture restricted a wife's right to contract or otherwise manage and control personal property interests of which her husband might take possession.[11] In any event, no contention is made in support of the current decision that authority to make payment contrary to the provisions of the negotiable instruments statutes can be based *8 on the remaining vestiges of coverture law in this jurisdiction or on any equitable principle of estoppel.[12] It seems apparent that the incorporation of such elements of control in estates by entireties would amount to an anachronism in our law.
Whether or not the Adkins opinion is sound or controlling in its statement that the estate attaches to cash proceeds, we do not think it stands for the proposition that the existence of an estate by entirety implies any agency in either spouse without the assent of the other to do any voluntary act which changes the character of the property held, i.e. from negotiable paper to cash, which is in effect the holding in the present case. No such authority can reasonably be implied from a right to possession of the property or of the proceeds of an instrument dischargeable by payment without endorsement. Neither did the decision in American Central Insurance Co. of St. Louis, Mo. v. Whitlock,[13] holding a husband liable for the full amount of the note on his endorsement of a note held as an estate by entirety, require a finding that his endorsement worked an effective transfer of the estate, and in context should not be so construed.
Our conclusion on a consideration of Florida law and decisions is that the court in the Bello opinion, supra, did not enunciate the rule which should control the point in dispute under the law of this state. The principles applied in the cases governing estates by entirety do not in our opinion prevent the application or enforcement of the literal provisions of the negotiable instrument statutes, supra, under which the signatures of both spouses are required in the situation presented unless actual authority for the endorsement is shown. The petition on the record in this proceeding presents no other point and our determination does not, of course, affect any independent issues or defenses which may control the final disposition of the cause.
The writ is therefore issued, the judgment of the appellate court is quashed, and the cause remanded for further proceedings in accordance herewith.
THOMAS, Acting C.J., and O'CONNELL and ERVIN, JJ., concur.
ROBERTS, J., dissents.
NOTES
[1] Fla.App. 1966, 190 So.2d 799.
[2] 5 Cir.1959, 267 F.2d 190.
[3] Forged signature.  Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."
"674.44 Payable to order of two or more.  When an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others."
[4] 267 F.2d 190, 194.
[5] Ibid, p. 193.
[6] Bailey v. Smith, 89 Fla. 303, 103 So. 833, 834.
[7] It seems clear that the right of a spouse to make a transfer of funds from a checking account held as an estate by entirety upon one signature is based upon express delegation of such agency in the creation of the account. Hagerty v. Hagerty, Fla. 1951, 52 So.2d 432. This case in fact involved only survivorship and not alienability. Cf. Rader v. First Nat'l Bank in Palm Beach, Fla. 1949, 42 So.2d 1. Whether the existence of an individual power of alienation is inherently incompatible with this estate, which by definition is individually inalienable, is not treated at length in the opinions. The argument is quite strong for the conclusion that, at least as to property transferable by delivery of possession alone, the estate cannot exist because of incompatibility with the entireties' doctrine. Holman v. Mays, 1936, 154 Or. 241, 59 P.2d 392, 395. Disposition of the point, however, is not essential in the case now presented.
[8] 131 Fla. 478, 180 So. 41.
[9] The opinion, p. 44, quotes Freeman on Cotenancy, 2d Ed., Sec. 73: "* * * he has the further right to reduce her personal estate to his possession, to sue for her chattels and upon her choses in action in his own name, and to dispose of her personal property as he may think fit. The same power which enables a husband to obtain possession and control of the wife's estate when held by her in severalty, entitles him to a similar power over her interest in like property held by herself and husband in entireties."
[10] F.S. Sec. 708.08-708.10, F.S.A.
[11] Blood v. Hunt, 97 Fla. 551, 121 So. 886. Cf. State v. Herndon, 158 Fla. 115, 27 So.2d 833.
[12] F.S. Sec. 708.03, F.S.A. Flash Bonded Storage Co. v. Ades, 1943, 152 Fla. 482, 12 So.2d 164.
[13] 122 Fla. 363, 165 So. 380.