651 So.2d 1271 (1995)
David ROBINSON, as Co-Personal Representative of the Estate of Marvin L. Robinson and Co-Trustee of the Marvin L. Robinson Amended and Restated Declaration of Trust, Appellant,
v.
Marilyn Z. ROBINSON, Appellee.
No. 94-0624.
District Court of Appeal of Florida, Fourth District.
March 15, 1995.
Ian Douglas Atlas, Robin Corwin Campbell and Eric Lee of Atlas, Pearlman, Trop & Borkson, P.A., Fort Lauderdale, for appellant.
Marcy S. Resnik of Bedzow, Korn & Kan, P.A., Aventura, for appellee.
PER CURIAM.
David Robinson ("Personal Representative"), as Co-Personal Representative of the Estate of decedent, Marvin L. Robinson ("Decedent") and co-trustee of the Marvin L. Robinson Amended and Restated Declaration of Trust ("Trust"), appeals from the trial court's order determining ownership of property filed by appellee, petitioner below, surviving spouse of Decedent, Marilyn Robinson ("Wife"). The trial court ordered all household *1272 furnishings and art vested by operation of law in Wife; and because Wife agreed to abide by Decedent's wishes, the "Tang Horse and Rider" and "Nieman sailboat print" were held estate assets. We affirm.
This case arises from a family dispute over the ownership of 112 pieces of art (Art) and household furnishings (Household Goods). Two of the pieces of Art were devised in Decedent's will. Wife petitioned for a declaration as to her ownership rights in all of the Art and Household Goods. Personal Representative, Decedent's brother, claimed that all of the items were estate assets. He planned to utilize proceeds from the sale of same to satisfy estate tax liability on the $9.8 million gross estate. Conversely, Wife, also a co-personal representative of Decedent's estate, claimed that she was the sole owner of the property by reason of either an inter vivos gift made at the time of purchase of the personal property or by operation of the right of survivorship incident to tenancy by the entirety. There was conflict between the Will, First Codicil, Letter, Trust, testimony and other evidence as to the ownership and disposition of the Art and Household Goods.
Decedent and Wife were married in 1974 and it was conceded that the 18 year marriage, a second marriage for both, was a happy one. Decedent has two daughters from a prior marriage, Shirley and Jill. There was no prenuptial agreement.
Decedent's Last Will and Testament, executed on February 13, 1987, provided in Item 4 that Decedent may leave a written statement or list disposing of certain items of tangible personal property and that all personal property not so listed would be disposed of as provided in Item 5 of the Will. Item 5 provided that except as provided in Item 4, all remaining tangible property was bequeathed to Wife. Item 6 provided that the residue of Decedent's personal and real property was bequeathed to the Trust established on June 3, 1976 and restated on February 3, 1987.
The First Codicil amended Item 4 of the Will and made specific bequests of personal property. The "Tang Horse and Rider" and "Nieman sailboat print" were devised to Decedent's daughter, Shirley, and "my large Tang Camel" was devised to Wife if she displays it in her home; otherwise, it was to be auctioned and the proceeds added to the Trust. Decedent also bequeathed any three items of personal property except the Chinese Art, paintings and antiques to his daughter, Jill.
Decedent's July 31, 1990, Letter directed that Shirley receive the Horse and Rider, Nieman sailboat print and the "three colored Tang." It also directed that Wife display the Camel or auction it [as provided in First Codicil].
The Third Amendment to the Trust provided that the trustees shall distribute all of the grantor's works of art used by grantor at his personal residence and household furniture and furnishings outright to Wife free and discharged from the Trust, as grantor did not intend to claim any interest in any such property which may already belong to his wife. The trustees were authorized to honor, in their discretion, any such ownership.
Wife conceded that the property in issue was purchased with Decedent's money  not from a joint account, and that some of the purchase invoices were in Decedent's name. Wife was not employed during the marriage, but volunteered, painted and took classes. All of the property was located in the home where the Decedent and Wife lived when Decedent expired.
The doctrine of tenancy by the entirety with respect to personal property was expressly recognized in Bailey v. Smith, 89 Fla. 303, 103 So. 833 (1925) (savings bank deposit and mortgage). Adhering to Bailey, in a case where a judgment creditor, Hector Supply, brought a garnishment proceeding against the bank as garnishee for collection against the bank account held by the judgment debtor and his wife, our supreme court expounded on the doctrine and set forth the test for determining whether such an estate in personalty has been created in First National Bank of Leesburg v. Hector Supply Co., 254 So.2d 777 (Fla. 1971):
In realty matters, where property is acquired specifically in the name of husband and wife, we consider it to be a rule of construction *1273 that a tenancy by the entireties is created, although fraud may be proven... . [I]n personalty matters, a different standard obtains: not only must the form of the estate be consistent with entirety requirements, but the intention of the parties must be proven. The reason for this double standard is easily understood. Realty matters are matters of record which occur infrequently, and which generally involve formal transactions necessarily requiring consent of both spouses. Personalty, on the other hand, is generally not under mandate of record; it may easily be passed by either spouse without mutual consent or without knowledge of the other spouse; finally, it may change hands with great frequency, as in the case of the checking account. In re Lyons' Estate, supra, at 90 So.2d 39, 42 (1956). Another reason for the distinction is that the application of entireties concepts to personalty becomes exceedingly complex as the nature of the personalty increases in sophistication, and the judicial mind seeks to require greater safeguards lest the tenancy be abused.
Id. 254 So.2d at 780-781 (emphasis supplied) (citations omitted).
Leesburg articulates that in addition to proof of intent:
A viable tenancy by the entirety, with regard to either realty or personalty, must possess always and at the same time the following characteristics of form: unity of possession (joint ownership and control); unity of interest (the interests must be the same); unity of title (the interests must originate in the same instrument); unity of time (the interests must commence simultaneously); and, the unity of marriage.
Id. 254 So.2d at 781 (emphasis supplied) (recognizing tenancy by the entirety in bank account; remanding for determination of intent).[1]
The Personal Representative argued that we should reverse because the trial court utilized a presumption that a tenancy by entirety was established, when such a presumption does not exist in regard to personal property. As the court explained in In re Marchini, 45 B.R. 187 (Bankr.S.D.Fla. 1984), there is no presumption that the personal property is held as an estate by the entireties, rather than as tenancy in common, merely from the character or use of the personal property. The court elaborated that personal property is not under mandate of record, changes hands frequently without knowledge and consent of the other spouse and is a ready and tempting shelter for creditors' claims, which require greater safeguards lest the tenancy be abused. The problem with the Personal Representative's argument is that the trial court did not utilize the presumption.
Here, the trial court found that the evidence presented indicated that: (1) the property was purchased with Decedent's funds and certain purchase invoices were in Decedent's name; (2) a homeowner's insurance policy and the policies insuring the art work named both the Decedent and Wife as coinsureds; (3) the decision to purchase the property and what property was selected for purchase were made jointly by Decedent and Wife; (4) the Decedent and Wife maintained a binder in which all paperwork for the items of art work was contained and in which an itemized inventory of the art work was kept; (5) the Decedent affixed a label upon each item of art work containing a number corresponding *1274 to the number assigned to the item in the inventory and on which the words "M & M Robinson Collection" were written, which signified that Decedent and Wife were the owners of these items; (6) the items of art work were not segregated or otherwise set aside for the exclusive use of the Decedent, but instead were displayed throughout the home of Wife and Decedent; and (7) the Decedent and Wife transported the art work to each new home they purchased and displayed it throughout each home.
Although the order being appealed did not expressly articulate which items of evidence established each of the five unities and the requisite intent for the creation of a tenancy by the entireties estate, neither did it rely on a presumption that the property was owned as tenants by the entirety merely because it was acquired during the marriage. The evidence in the record clearly supports the trial court's conclusion  absent any presumption  that the subject property was held as tenants by the entireties.
AFFIRMED.
GLICKSTEIN, KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] See also Amsouth Bank of Fla. v. Hepner, 647 So.2d 907 (Fla. 1st DCA 1994) (reversing trial court's finding truck held as entireties property; creation of estate by the entirety in automobile registered in Florida requires intention and registration in names of husband and wife because form of estate must be consistent with entirety requirements; citing Leesburg); Smith v. Hindery, 454 So.2d 663 (Fla. 1st DCA 1984), disapproved on other grounds in In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla. 1986) (finding entireties estate in truck even though title held in names of a cattle rustler or his wife because 1979 amendments to section 319.22(2) providing use of disjunctive in title creates joint tenancy not retroactive); In re Estate of Cardini, 305 So.2d 71, 73 (Fla. 3d DCA 1974), cert. denied, 318 So.2d 405 (Fla. 1975) (in declaratory action by widow alleging entitlement to proceeds from sale of real property, evidence did not establish intent to receive proceeds as tenants by entireties where decedent held title; creation of estate in entirety in personalty fundamentally question of intent, which must be proven; citing Bailey and Leesburg).