THE LEWIS STATE BANK v. IRA B. RAKER, as Administrator of the Estate of James E. Jackson, deceased, IRA B. RAKER, for the use and benefit of Gertrude N. Jackson, and Gertrude N. Jackson, a widow.

189 So. 227
Division A
Opinion Filed May 23, 1939

228

*Oven & Oven*, for Appellant;

*Waller & Meginniss* and *Madeline A. Jacobson*, for Appellees.

THOMAS, J.—In the former appeal of this cause the court decided that the bill of complaint was not without equity and affirmed the action of the chancellor denying a motion to dismiss. Lewis State Bank v. Raker, 126 Fla. 477; 171 So. Rep. 319.

We have examined the testimony introduced by the re-

spective parties and find that the following facts are relied upon by the complainants to substantiate the allegations of the bill of complaint: Ira B. Raker was appointed by the County Judge of Wakulla County administrator of the estate of James E. Jackson, and that capacity became possessed of certain monies which he deposited in the Lewis State Bank, reaching the amount, on April 8, 1931, of $2,774.69. On March 4, 1931, the County Judge, one Raney Whaley, entered an order requiring the administrator to pay the costs of the proceedings, his and his attorney's fees and an amount owed by the widow to another bank, and to remit to Gertrude N. Jackson, widow of James E. Jackson, the sum of $2,728.29 with interest.

In obedience to this order, the administrator issued checks for the sums ordered to be paid, including one for the residue to Gertrude N. Jackson. Upon verbal request by the County Judge, the administrator delivered the checks to the former, who agreed to mail them to the payees. Instead of forwarding the check to Gertrude N. Jackson, the County Judge indorsed the same "Gertrude N. Jackson by Raney Whaley," and presented the same for payment at the Capital City Bank in Tallahassee, where it was, according to the bank's records, deposited to Whaley's credit. This bank immediately presented the check to the Lewis State Bank, the drawee, and it was paid.

On the 13th of April, 1931, Raney Whaley paid to the Lewis State Bank the balance of one hundred dollars due on a promissory note signed by him and indorsed by another person. The same day Whaley deposited in the Lewis State Bank $103.70 and the following day, $250.00. No part of the residue of the estate due Gertrude N. Jackson has been paid to her. The records of the two banks also show a check for $250.00 on Whaley's account in the Capital City

Bank and a deposit on the same day in the Lewis State Bank for that amount.

The County Judge, despite his knowledge that he had misused the monies of the estate belonging to Gertrude N. Jackson, on the 22nd of June, ordered the administrator discharged. Several months elapsed before the administrator learned of the irregularity in handling the funds of the estate.

From August, 1932, until July, 1933, there was an exchange of correspondence between attorneys in Brooklyn and in Tallahassee, discussing the rights and remedies of Gertrude N. Jackson, and finally in August, 1935, the bill was filed.

The rascality of Raney Whaley seems thoroughly established. He presumed upon the respect that one in his position should command and induce the administrator to deliver to him a check which was given for the payment of funds which were held in trust by the one and subject to the supervision of the other. He proceeded to sign the payee's name on the check without apparent authority and then appropriated the money to his own needs. Between the dates the check was made and deposited he advised Gertrude N. Jackson that she could expect her money soon. Sometime after July 21 he wrote her that it would be remitted "as soon as the law had been fully complied with." Five months after the misappropriation (September 30) he assured her "it is in the hands of the Court and perfectly safe so you have nothing to worry over," and on December 1: "Mr. Ira B. Raker has nothing more to do with this money and it is in the hands of the Court * * * perfectly safe * * *." These assurances were made by Whaley knowing he had taken legatee's money unlawfully and converted it to his own use.

The defendant is not chargeable with the gross miscon-

duct on the part of Whaley, County Judge, but it is well to review his actions for he was able to take advantage of Gertrude N. Jackson because of the part the bank played in honoring a check, indorsed as we have shown when on its face such indorsement was irregular. It is a fact, too, that Whaley was no stranger to the bank. He was a depositor and his account was carried in the title of "Judge Raney Whaley, Crawfordville, Florida." He was a debtor, also, because of the notes to which we have referred. Evidently the bank had some knowledge of his financial standing for he was able to borrow money, although his note bore the name of indorsers.

Another very significant circumstance is the signature on the check in question, namely: "Ira B. Raker, Admr. of Estate James E. Jackson." Thus, to summarize, when the defendant bank paid the check it was with full knowledge that it was given by the administrator of an estate and indorsed by a county judge who owed the bank and carried a deposit there.

The chancellor decreed restoration to the credit of the administrator the sum of $2,777.69, with interest from July 31, 1933.

Appellant asserts with confidence that appellees cannot prevail because of great delay in bringing suit after learning of the fraud which had been perpetrated, and places stress upon the fact that although vouchers were mailed to administrator he waited for a long period of time before notifying the bank of the irregularity in the indorsement on the check of Gertrude N. Jackson. There is some testimony about absence of this check from cancelled vouchers mailed to administrator and the delivery of it only on demand, but this seems rather unimportant when considered with the other facts which we have reviewed.

It is conceded by appellant that the relationship of debtor

and creditor existed between the bank and administrator and that ordinarily a bank may not charge a depositor's account with the amount of a check paid on a forged indorcement but urged that there was a duty on the part of administrator to apprise the bank in this instance so it could protect itself.

Assuming that depositor had made discovery of some irregularity which was unknown to his debtor bank, this would be convincing, but we cannot sympathize with such a position in view of Whaley's relationship with the bank, his official position, and, most important, an indorsement which was not forgery but a wholly unauthorized act. When the bank paid the check a casual glance at the indorsement would have given them all the information which Raker could have imparted, even disregarding his statement that the check was withheld and surrendered only upon personal demand. It was not peculiarly within his knowledge that there had been an unauthorized payment, but the fact was apparent on the face of the instrument. The charge of laches, considered in the light of all the facts and circumstances in this case, must fall.

In Louisville & N. R. Co. v. Citizens' & Peoples Nat. Bank, 74 Fla. 385, 77 South. Rep. 104, L. R. A. 1918C 610, opinion was expressed as to the responsibility of accepting the indorsement of an agent. It was held that the bank "assumed the sole responsibility of treating Weekly as the agent of the plaintiff, with authority to indorse its name upon checks * * *. It committed a wrong for which it is answerable in damages—a wrong to which it cannot be said that either the drawers or payee were parties." 74 Fla. 385, 77 South. Rep., text 106, L. R. A. 1918C 610.

So, here, Raker, administrator, and Jackson, payee, were not parties to the irregular indorsement by Whaley and the honoring of it by the bank.

We do not think the decision should be influenced by the part played by Capital City Bank. The deposit was not with them, hence there was no duty on their part to investigate the authority of Whaley except to protect that bank should appellant refuse payment of the check. When the voucher was paid by the depository bank the matter was closed so far as Capital City Bank was concerned. Had payment been refused, as it should have, Capital City Bank would have found it on its hands, in which case, however, the beneficiary's interest would have been safeguarded. See 6928 C. G. L. 1927.

"A bank, paying a check upon the unauthorized endorsement of the payee, and charging the amount thereof to the drawer's account, becomes liable to the *payee* for the amount of such check, unless the conduct of the payee excuses such payment or prevents him from asserting such liability." (Emphasis supplied.) McFadden v. Follrath, 114 Minn. 85, 130 N. W. Rep. 542, 37 L. R. A. N. S. 201, third headnote.

The bill contained the prayer, besides the one for restoration, that the order of the county judge be cancelled and that Ira B. Raker be decreed the present and continuing administrator. As we have said, complainants prayed for restoration, and that it be made to Raker.

The chancellor found the equities in favor of the complainants and ordered the restoration to Raker, as administrator, without specifying that the order of discharge be set aside. We think it is obvious that the order was in effect set aside, and consider it needless to refer the cause to the chancellor for amendment of the decree.

The decree is affirmed.

TERRELL, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.