232 So.2d 29 (1970)
WILTON MANORS NATIONAL BANK, Appellant,
v.
ADOBE BRICK & SUPPLY CO., Inc., a Delaware Corporation, and First Bank of Plantation, a Corporation Chartered under the Banking Laws of the State of Florida, Appellees.
FIRST BANK OF PLANTATION, Appellant,
v.
ADOBE BRICK & SUPPLY CO., Inc., a Delaware Corporation, et al., Appellees.
Nos. 2398, 2413.
District Court of Appeal of Florida, Fourth District.
February 20, 1970.
*30 Gaylord A. Wood, Jr., of Rogers, Morris & Ziegler, Fort Lauderdale, for appellant Wilton Manors Nat. Bank.
Davis W. Duke, Jr., and James J. Linus, of McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellant First Bank of Plantation.
Theodore P. Sobo, Fort Lauderdale, for appellee Adobe Brick & Supply Co.
REED, Judge.
This is an appeal from an amended final judgment rendered by the Court of Record for Broward County, Florida. The appellants, Wilton Manors National Bank and First Bank of Plantation, were the defendants in the trial court. The appellee, Adobe Brick & Supply Co., Inc., (hereafter called "Adobe") was the plaintiff.
The complaint filed by Adobe against both banks alleged that in April of 1966 the defendants negligently and wrongfully paid a check on which the plaintiff was a co-payee without obtaining the plaintiff's indorsement. The defendants' answers essentially contained a general denial. The cause was tried before the judge without a jury on 15 March 1968. It resulted in an amended final judgment against both of the banks for the full amount of the check. The appeal is from the amended final judgment.
The record indicates that an organization by the name of Gene's Plastering, Inc., had a contract with Boniello Homes, Inc. Under the contract, Gene's Plastering, Inc., was to perform certain work on an apartment building owned by Boniello Homes, Inc. In the performance of this contract Gene's Plastering, Inc., used materials supplied to it by Adobe on open account. For these materials, Gene's Plastering, Inc., owed Adobe $1,569.39.
Boniello Homes, Inc., owed Gene's Plastering, Inc., $3,150.00 for the latter's work on the apartment house. On 8 April 1966 the president of Boniello Homes, Inc., spoke with an agent of Adobe by telephone *31 and discovered that Adobe had not been paid for the materials which it supplied to the job for use by Gene's Plastering, Inc. After having obtained this information, Boniello's president made out a check for the $3,150.00 due to Gene's Plastering, Inc., on its contract with Boniello. The check was dated 8 April 1966 and drawn on Boniello's account with the defendant Wilton Manors National Bank. The payees named in the check were "Gene's Plastering and Adobe Brick Co." The check was given to Eugene Mall who was evidently the owner of Gene's Plastering, Inc. The check was indorsed "Gene's Plastering, Inc." and deposited without the indorsement of Adobe in the account of Gene's Plastering, Inc., with the defendant First Bank of Plantation. The check was then forwarded to the drawee, the defendant Wilton Manors National Bank, and charged against the account of Boniello Homes, Inc., the maker of the check. None of the proceeds from the check were received by the plaintiff, Adobe, and this law suit followed. At the time the check was delivered, Gene's Plastering, Inc., owed the plaintiff about $9,000.00 on open accounts, but only $1,569.39 of this amount was represented by materials supplied for incorporation in the building owned by Boniello Homes, Inc.
The issue here is whether or not the collecting bank (First Bank of Plantation) and the drawee bank (Wilton Manors National Bank) or either of them may be held liable to the co-payee, Adobe, because of their treatment of the check and, if so, the extent of such liability.
At the outset we should note that the controlling statutory law is the Negotiable Instruments Law of the State of Florida as it existed prior to the adoption of the Uniform Commercial Code. All of the pertinent transactions occurred prior to 1 January 1967, the effective date of the Uniform Commercial Code.
The check in question was an instrument payable to order. Section 674.10, F.S. 1965, provides that an instrument is payable to order where it is drawn payable to the order of a specified person or his order. That statute also provides that where the instrument is payable to order, the payee must be named or otherwise indicated therein with reasonable certainty. The evidence in the present case indicates that the plaintiff and Gene's Plastering, Inc., were indicated on the face of the check as payees with reasonable certainty.
Where a negotiable instrument is payable to order, it cannot be transferred without the indorsement of all payees who are not partners, unless one of such payees has the authority to indorse for the others. Section 674.33 and 674.44, F.S. 1965. In the present case, there is no evidence that Gene's Plastering, Inc., had any authority to indorse the check for the plaintiff. It follows that when the collecting bank, that is the defendant First Bank of Plantation, took possession of the check without the indorsement of the plaintiff it acquired an imperfect title to the instrument. When the collecting bank made the proceeds of the check available to the co-payee, Gene's Plastering, Inc., it deprived the plaintiff of its interest in the check and is liable in conversion for the value of that interest, Glasser v. Columbia Federal Savings and Loan Association of Miami Shores, Fla. 1967, 197 So.2d 6; on remand, Glasser v. Columbia Federal Savings and Loan Association of Miami Shores, Fla.App. 1967, 198 So.2d 345.
As for the drawee bank, Wilton Manors National Bank, it is likewise liable to the payee for the payment of the check on the unauthorized indorsement, Lewis State Bank v. Raker, 1939, 138 Fla. 227, 189 So. 227. In the Raker case the opinion indicates that the plaintiff, Ira B. Raker, as the administrator of a decedent's estate, wrote a check on the estate's bank account *32 with the Lewis State Bank. The check was payable to Gertrude N. Jackson. She was the widow of the decedent and was entitled to receive the funds represented by the check. At the request of the county judge who had jurisdiction over the estate, Mr. Raker left the check with the county judge for delivery to Gertrude N. Jackson. Instead of delivering the check to Mrs. Jackson, the county judge indorsed the check "Gertrude N. Jackson By Raney Whaley" and deposited the same in his own account at the Capital City Bank. Thereafter the county judge entered an order discharging Raker as administrator of the estate. None of the proceeds of the check went to the rightful owner, Gertrude N. Jackson. The check was presented to the drawee Lewis State Bank and was paid by a deduction from the account of the administrator. The suit was in equity against the Lewis State Bank only. The relief sought was a cancellation of the order discharging Raker as administrator and a restoration by the bank of the funds which it had deducted from the estate's account upon receipt of the check bearing the unauthorized indorsement. The trial court granted this relief. The Florida Supreme Court affirmed stating:
"`A bank, paying a check upon the unauthorized indorsement of the payee and charging the amount thereof to the drawer's account, becomes liable to the payee for the amount of such check, unless the conduct of the payee excuses such payment, or prevents him from asserting such liability.'"
The appellants contend that the language quoted from the Raker case is dictum. In our opinion the language was not dictum, but was the principle of law applicable to the decision. In substance, the effect of the order of the trial court which was affirmed on appeal was to require a restitution by the drawee bank to the payee named in the check and such payee was in fact a party-plaintiff to the action seeking restitution. This is revealed by an earlier opinion in the case which may be found in Lewis State Bank v. Raker, 1936, 126 Fla. 477, 171 So. 319.
We conclude that under the facts of the present case the collecting bank and the drawee bank are liable to the plaintiff for the conversion of its interest in the check. The next problem is to determine the value of that interest. The trial court awarded the plaintiff a judgment for the entire amount of the check. Mr. Mann, the vice-president of the plaintiff, testified:
"Gene's Plastering owed us a general amount which included the amount owed by Mr. Boniello on his job. Mr. Boniello asked at the time how much money was due to Gene for materials shipped.
"I told him that there was this amount of approximately fifteen hundred dollars, but in addition Gene owed us the money which we permitted him to lag on knowing that he had more money coming from a job than sixteen hundred dollars. And with the permission of Mr. Boniello that the check should be made out jointly and that the entire proceeds were to be given to Adobe Brick and with the permission of Gene's Plastering." (Emphasis added.)
Other material testimony relating to the plaintiff's interest in the check was that of John Boniello, the president of Boniello Homes, Inc., the maker of the check. While his testimony is not without inherent conflict, Mr. Boniello testified with respect to the check as follows:
"Q. It was not in any payment of any contractual payment of Adobe Brick & Supply?
"A. I told him at the time that Mr. Mann notified me that the bill was not *33 paid and he suggested that I make it out jointly.
"Q. You were not meaning to pay Adobe for that job?

"Yes, I was.
"Q. Are you saying you had a contract with Adobe?
"A. Yes, because I knew that he would put a lien on my job." (Emphasis added.)
It appears to us that the evidence even when viewed most favorably to the successful litigant proves that the plaintiff's interest in the check did not exceed the value of the materials supplied by the plaintiff to the Boniello job, i.e., $1,569.39. This in our opinion was the amount of the check proceeds intended by the maker of the check to go to the plaintiff. The testimony of Mr. Mann to the effect that Gene's Plastering, Inc., had expressed consent that the plaintiff should have the entire amount of the check to apply on its open account with Gene's Plastering, Inc., was basically hearsay and too vague and insubstantial to support a finding that the plaintiff had acquired a greater interest in the check than that intended by the maker.
We have not overlooked the various theories advanced by the appellants to demonstrate a total lack of liability on their part. We simply have concluded that on the present facts they cannot control.
The amended final judgment from which the appeal is taken is hereby modified to award judgment to the plaintiff against the defendants for the amount of 1,569.39 together with interest thereon from 8 April 1966. Except as thus modified, the amended final judgment is affirmed.
McCAIN, J., concurs.
WALDEN, J., dissents, without opinion.