328 So.2d 476 (1976)
SIEGEL TRADING COMPANY, INC., an Illinois Corporation, Appellant,
v.
CORAL RIDGE NATIONAL BANK, a Banking Association, Organized and Existing under the Laws of the United States of America, Appellee.
No. 74-812.
District Court of Appeal of Florida, Fourth District.
March 12, 1976.
*477 William H. Kilby, Fort Lauderdale, for appellant.
Reed A. Bryan, of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for appellee.
OWEN, Judge.
Appellant sued appellee-bank, alleging that the bank had converted to its own use certain checks which were the property of appellant. The answer was a general denial, and upon the issues thus made the case was tried before the court without a jury resulting in a judgment adverse to appellant.
Appellant is a commodities broker with its main office in Chicago, Illinois, and a branch office in Fort Lauderdale, Florida. It opened an account with appellee-bank, entitled "The Siegel Trading Company, Inc., Customers' Segregated Account," for the deposit of customers' margin funds. Appellant provided the bank with corporate resolutions and signature cards authorizing only three officers in Chicago to sign checks on the account.
Subsequently, and without authority from appellant, the manager of appellant's Fort Lauderdale office, one Harold Goldstein, opened a checking account with appellee-bank entitled "Samstein, Inc., d/b/a Siegel Trading Co. of Fort Lauderdale," the authorized signatories being Goldstein and one Ronald Samuelson. Thereafter six customers' checks payable either to "Siegel Trading Company," or "Siegel Trading Company, Inc.," came into the hands of Goldstein. He endorsed four of these checks "Siegel Trading Co. of Fort Lauderdale," one check "For Deposit Only," and the remaining check "Traders Associates." All were deposited in the account which he had opened under the name of "Samstein, Inc., d/b/a Siegel Trading Co. of Fort Lauderdale," from which account Goldstein ultimately withdrew the funds.
After a nonjury trial, at which only appellant offered evidence, the trial court entered judgment for the bank finding that the bank did not fail to reasonably comply with its own commercial standards in opening the Samstein account and allowing the checks to be deposited to said account, and that, therefore, the bank was exculpated by Fla. Stat. § 673.419(3) (1973).[1] *478 Appellant contends that the defense of payment in good faith and in accordance with reasonable commercial standards as set out in Fla. Stat. § 673.419(3) is an affirmative defense, citing Robert A. Sullivan Construction Company, Inc. v. Wilton Manors National Bank, 290 So.2d 561 (Fla.App.4th 1974) and that such affirmative defense must be set forth by the defendant in its answer or otherwise the same is waived, citing Fink v. Powsner, 108 So.2d 324 (Fla.App.3rd 1958). We agree with these contentions but remind that there is an exception (applicable here) where the issue, even though not raised by the pleadings, is tried by implied consent of the parties. See, Rule 1.190(b) RCP.
Appellant next contends that even if the defense was made an issue, it was error for the court to exculpate appellee-bank under the provisions of Fla. Stat. § 673.419(3) based only upon the court's written findings that the bank "did not fail to reasonably comply with its own commercial standards." Appellant's tripartite argument in support of this point is (1) the court neglected to find that appellee acted in good faith, an essential element of this defense, (2) the court merely found that appellee-bank adhered to its own standards whereas it is the intent of the statute that the bank must act in accordance with reasonable commercial standards applicable to the banking business, and (3) the court's finding that appellee-bank did not fail to reasonably comply with its own commercial standards fails to require that the appellee's standards be reasonable, contrary to the plain language of the statute which requires compliance with "reasonable commercial standards," not "reasonable compliance" with commercial standards. We conclude that each of appellant's several contentions in support of this point are sound and that in order for the court to exculpate appellee under Fla. Stat. § 673.419(3) it must find that the appellee-bank acted in good faith and in accordance with the reasonable commercial standards applicable to the banking business.
Although appellant also contends that on the evidence in the record it is clear that appellee did not act in accordance with any commercial standards, let alone reasonable commercial standards, we must disagree. While the evidence was not strong, it was certainly susceptible of an inference of conduct in accordance with reasonable commercial standards applicable to the banking business. Whether the trial court, as the trier of fact, would have made such finding we cannot say. We simply conclude that in exculpating appellee under the provisions of Fla. Stat. § 673.419(3), the trial court did not apply the proper criteria. The interests of justice will best be served by reversing the judgment and remanding the cause for a new trial.
REVERSED and REMANDED.
MAGER, J., and DIAMANTIS, GEORGE N., Associate Judge, concur.
NOTES
[1] "Fla. Stat. § 673.419 Conversion of instrument; innocent representative

(1) An instrument is converted when:
(a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or
(b) Any person to whom it is delivered for payment refuses on demand either to pay or to return it; or
(c) It is paid on a forged indorsement.
* * * * *
(3) Subject to the provisions of this code concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."